**PACE INTERNATIONAL UNION, AFL–CIO, CLC, and Its Subordinate Local No. 733, Plaintiffs–Appellants,**

v.

**VACUMET PAPER METALIZING CORPORATION, Defendant–Appellee.**

No. 02–6067.

United States Court of Appeals, Sixth Circuit.

Jan. 12, 2004.

Donald F. Mason, Jr., Shine & Mason, Kingsport, TN, for Plaintiff–Appellants.

Timothy F. Zitzman, Bass, Berry & Sims, Knoxville, TN, David W. Miller, Kevin S. Smith, Baker & Daniels, Indianapolis, IN, for Defendant–Appellee.

Before NORRIS and GILMAN, Circuit Judges; and BUNNING, District Judge.[*]

## OPINION

GILMAN, Circuit Judge.

This case arises out of a labor dispute between Pace International Union, AFL–CIO, CLC, and its Subordinate Local No. 733 (collectively, PACE) and Vacumet Paper Metalizing Corporation (Vacumet). PACE sought an order to compel arbitration concerning the allegedly wrongful termination of Vacumet employee Roy Nichols. Vacumet argued that, by agreement of the parties, the dispute was not subject to arbitration. For the reasons set forth below, we REVERSE the judgment of the district court and REMAND with instructions to refer the dispute to arbitration.

## I. BACKGROUND

Vacumet employees Roy Nichols and David Munsey were terminated on October 26, 1999 for fighting on the job. PACE filed a grievance on behalf of Nichols on November 2, 1999. Nichols, PACE Vice President Ken Coffey, and Vacumet

[*] The Honorable David Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Plant Manager Todd Berger signed a "Last Chance Agreement" (LCA) on November 29, 1999 that reinstated Nichols, but placed him on probation and limited his remedies under the collective bargaining agreement (CBA).

On June 21, 2000, Vacumet terminated Nichols for alleged violations of company work rules. Three days later, PACE filed a grievance, contending that Nichols was wrongfully terminated. The grievance proceeded through the three-step framework for dispute resolution specified in the CBA. Because the dispute was not resolved by the grievance process, PACE demanded arbitration pursuant to the following CBA provision:

> If any grievance that involves the interpretation or application of the express terms of this agreement is not satisfactorily disposed of in Step 3 of the grievance procedure provided for in [the CBA], [PACE] may, within thirty (30) calendar days after receipt of the answer in writing at Step 3 of the grievance procedure, give to [Vacumet] . . . a written notice of its desire that the matter be submitted to arbitration.

Vacumet gave its "answer in writing at Step 3" on June 30, 2000. PACE then requested arbitration on July 17, 2000. Because Vacumet did not respond, PACE again requested arbitration on September 6, 2000. Vacumet finally responded on September 21, 2000, asserting that the LCA precluded arbitration on the issue of whether Nichols violated a work rule. PACE filed its complaint on March 14, 2001, seeking an order from the district court to compel arbitration. The parties then filed cross-motions for summary judgment. In support of its motion, Vacumet filed affidavits stating that Nichols had interfered with the performance of other workers, had failed to properly prepare a machine, and had conversed with a coworker outside of his work area for an impermissible length of time. The district court granted Vacumet's motion and denied PACE's motion. This appeal followed.

## II. ANALYSIS

### A. Statute of limitations

■ Vacumet challenges the district court's determination that PACE's complaint was timely filed under the applicable six-month statute of limitations. PACE sought to compel arbitration pursuant to Section 301 of the Labor Management Relations Act of 1947, codified at 29 U.S.C. § 185. Such claims are governed by the six-month statute of limitations borrowed from Section 10(b) of the National Labor Relations Act, codified at 29 U.S.C. § 160(b). *McCreedy v. Local Union No. 971*, 809 F.2d 1232, 1237 (6th Cir.1987). PACE argues that Vacumet cannot challenge the district court's ruling on the statute-of-limitations issue because it failed to bring a cross-appeal. Because Vacumet's statute-of-limitations argument provides an alternative ground to sustain the district court's judgment, however, Vacumet may make the argument on appeal without filing a cross-appeal. *See United States v. Neal*, 93 F.3d 219, 224 (6th Cir. 1996). Whether the complaint was in fact timely filed is a matter we review de novo. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir.1999).

■ "A union's cause of action to compel arbitration arises when the employer takes an unequivocal position that it will not arbitrate." *McCreedy*, 809 F.2d at 1237. Although Vacumet asserted in its answer to the Step 3 grievance process that Nichols had waived his right to arbitration, this refusal to arbitrate was premature because PACE had not yet demanded arbitration. In fact, the terms of

the CBA permit PACE to request arbitration only in the 30 days *after* Vacumet had submitted its "answer in writing at Step 3." PACE requested arbitration within this 30–day period and was not unequivocally denied arbitration in a response by Vacumet until September 21, 2000. PACE filed its complaint on March 14, 2001, within six months of Vacumet's unequivocal denial. Thus PACE's suit was timely filed.

### B. Arbitrability of Nichols's grievance

The district court granted Vacumet's motion on the ground that PACE "failed to come forward with any specific facts that would show [Nichols] did not violate the specified work rules" and thus "failed to identify specific facts that would create a genuine issue of material fact." PACE, however, contends that Nichols's grievance was subject to arbitration and that the district court erred by not first determining the arbitrability of the grievance. We agree.

The Supreme Court has held that

where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks omitted). The presumption of arbitrability can be overcome only by an agreement between the parties that contains an "express provision excluding a particular grievance from arbitration," or, in the absence of such a provision, "forceful evidence of purpose to ex-clude [a grievance] from arbitration." *Id.* at 650, 106 S.Ct. 1415.

Vacumet makes two arguments regarding the existence of an express provision excluding from arbitration the question of whether Nichols violated a work rule. First, it argues that the language of the LCA unambiguously prohibits Nichols from seeking arbitration on any question relating to his discharge. The LCA provides in pertinent part as follows:

The Employee realizes the seriousness of his conduct. Therefore, Employee will be on probation for one year, during which time any violation of the Company policy or rules may result in discharge and the Employee and/or union may not challenge the discharge in the grievance or arbitration procedure.

PACE contends that this language means only that *if* Nichols actually violates a work rule, then he waives his right to challenge whether that violation gives Vacumet "just cause" to discharge him. Vacumet, on the other hand, argues that the LCA should be read as waiving, in addition, the right to arbitrate a dispute as to *whether* he broke a work rule in the first place. Because the LCA is susceptible to more than one reasonable interpretation, we must resolve the ambiguity in favor of arbitrability. *See AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. 1415. This result is reinforced by the general rule that ambiguous language is construed against the drafting party, which in this case was Vacumet. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n. 7 (6th Cir.1998). Finally, we note that the Third Circuit reached the same conclusion in *United Steel Workers of America v. Lukens Steel Company*, 969 F.2d 1468, 1476–78 (3d Cir.1992) (interpreting similar language in an LCA as bifurcating the threshold question of guilt from the final question of punishment).

Vacumet's second argument is that the express language of the CBA's arbitration clause excludes this dispute from arbitration. The CBA provides that a "grievance that involves the interpretation or application of the express terms of this agreement" may be submitted to arbitration. Nichols's grievance arises from an alleged violation of company work rules. Vacumet asserts that the work rules are expressly excluded from the CBA by the terms of the cover page to the rules, which states that "work rules are not part of the collectively bargained agreement but have been included for convenience."

The CBA, however, provides that "[a]ll seniority and employment shall terminate for the following reasons: A. Discharge for just cause or quit." Whether Nichols was discharged for just cause thus comes within the broad language of the arbitration clause, and the LCA is ambiguous as to Vacumet's right to exclusively determine if Nichols in fact violated the work rules. Moreover, Vacumet acknowledged in its answer that the CBA "requires the parties to resolve grievances arising out of the terms and conditions of employment by arbitration." Under these circumstances, we cannot say "with positive assurance" that Nichols's grievance is not covered by the arbitration clause. The presumption of arbitrability therefore applies to Nichols's grievance.

Finally, because the presumption of arbitrability is not overcome by an express provision, Vacumet had the burden to produce "forceful evidence" of an intention to exclude Nichols's claim from arbitration. *AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. 1415. Vacumet had the opportunity to produce such evidence in its response to PACE's motion for summary judgment, but failed to do so.

## III. CONCLUSION

For all of the reasons set forth above, we REVERSE the judgment of the district court and REMAND with instructions to refer the dispute to arbitration.