**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1699
_____

EMPLOYER TRUSTEES OF WESTERN
PENNSYLVANIA TEAMSTERS;
EMPLOYERS WELFARE FUND,
Appellants

v.

UNION TRUSTEES OF WESTERN PENNSYLVANIA
TEAMSTERS;
THOMAS N. HEIDER; JOSEPH A. MOLINERO;
JAMES W. MCCLELLAND, JR.;
ALBERT J. RUSH;
THOMAS HUCK
_____

No. 16-3359
_____

UNION TRUSTEES OF WESTERN PENNSYLVANIA
TEAMSTERS,
EMPLOYERS WELFARE FUND; THOMAS N. HEIDER;
JOSEPH A. MOLINERO; JAMES W. MCCLELLAND, JR.;
ALBERT J. RUSH; THOMAS HUCK,
Appellants

v.

EMPLOYEES OF WESTERN PENNSYLVANIA
TEAMSTERS AND EMPLOYERS WELFARE FUND;
WILLIAM J. DILLNER; M. E. DOUTT; ROBERT
JACKSON;
RAYMOND MILLER; STEPHAN SPOLAR

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Nos. 2-15-cv-1417 & 2-16-cv-00084)
District Judge: Honorable Terrence F. McVerry

_____

Argued January 18, 2017

_____

Before: AMBRO, VANASKIE, and SCIRICA, *Circuit
Judges*

(Opinion Filed: August 31, 2017)

Robert F. Prorok, Esq.          [Argued]
Carsen N. Ruperto, Esq.
COHEN & GRIGSBY
625 Liberty Avenue
Pittsburgh, PA 15222
	*Counsel for Employer Trustees of Western
Pennsylvania Teamsters and Employers Welfare Fund,
William J. Dillner, Jr., M.E. Doutt, Robert Jackson, Raymond
Miller, Stephan Spolar*

Joseph J. Pass, Esq.        [Argued]
JUBELIRER PASS & INTRIERI
219 Fort Pitt Boulevard
1st Floor
Pittsburgh, PA 15222
    *Counsel for Union Trustees of Western Pennsylvania Teamsters, Thomas N. Heider, Joseph A. Molinero, James W. McClelland, Jr., Albert J. Rush, and Thomas Huck*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge*

    Arbitration has long played an integral role in settling labor disputes arising between employees and employers. Recognizing the effectiveness of arbitration in this context, § 302(c)(5) of the Labor Management Relations Act ("LMRA") explicitly requires employee benefit trust funds to include a mechanism for arbitrating deadlocks amongst trustees that develop in the course of fund administration. This appeal features two such deadlocks, each involving a faction of trustees petitioning the District Court to appoint an arbitrator to break the stalemate despite objections from the other members. The District Court declined to send either conflict to arbitration, finding that the trust agreement did not permit such an appointment. We disagree, finding that both disputes were within the purview of the parties' agreement to arbitrate. Accordingly, we will remand for appointment of an arbitrator in each action.

3

**I.**

The Western Pennsylvania Teamsters and Employees Welfare Fund ("the Fund") is a multi-employer benefit plan established under § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Section 302 aims to "deal with problems peculiar to collective bargaining" such as "corruption . . . through bribery of employee representatives by employers, . . . extortion by employee representatives, and . . . possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States*, 359 U.S. 419, 425–26 (1959). To accomplish this end, the section broadly prohibits employers from providing payments of money or other items of value to employee representatives. *Associated Contractors of Essex Cty., Inc. v. Laborers Int'l Union of N. Am.*, 559 F.2d 222, 225 (3d Cir. 1977), *abrogated by Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993). The provision, however, does incorporate an exception for employee benefit trust funds that comply with certain statutory requirements, including mandatory administration by a board of trustees composed of an equal number of employee and employer representatives. *Associated Contractors*, 559 F.2d at 225.

In compliance with § 302's equal representation requirement, the Fund is overseen by ten trustees (collectively, the "Trustees"): five union-designated trustees (the "Union Trustees") and five employer-designated trustees (the "Employer Trustees"). While this arrangement assures that both blocks of Trustees maintain equal voting power, it also results in deadlocks where the Employer and Union Trustees uniformly disagree. Anticipating this dilemma, § 302(c)(5) of the LMRA requires such benefit trust funds to

install a mechanism allowing a federal district court to appoint a neutral party to resolve any impasse. Accordingly, the Fund's Trust Agreement specifies that "[i]n the event of a deadlock," the Trustees "may agree upon an impartial umpire to break such deadlock by deciding the dispute in question." (Case No. 16-1699 App. at 162–63, Trust Agreement, § 3.15(a).) If the Trustees cannot agree on an "impartial umpire within a reasonable period of time, then, either group of Trustees . . . may petition the United States District Court for the Western District of Pennsylvania to appoint such impartial umpire." (*Id.*)

The Trustees now find themselves deadlocked on two motions: one seeking to approve payment of compensation to eligible Trustees for attendance at Fund meetings and the other seeking to clarify and confirm the eligibility requirements for Employer Trustees. In each case, one half of the board petitioned the District Court to appoint an arbitrator to settle the dispute, and the opposing half of the board sought to prevent the requested appointment.

## A.

The Trustees' first deadlock centers on an Employer Trustee's motion to pay compensation to eligible Trustees in "the amount of $600.00 per Trustee Sub-Committee Meeting and the amount of $600.00 per monthly Trustee Meeting, to be paid upon the Trustee's attendance at [the] meetings." (Case No. 16-1699 App. at 130, ¶ 17.) The Trustees have unanimously voted to approve similar compensation on three previous occasions since 1989. This time, however, all of the Employer Trustees united behind the measure while all of the Union Trustees voted against it, creating a deadlock. The Employer Trustees sought to refer the dispute to arbitration,

5

but the Union Trustees initially refused, arguing that two of the Employer Trustees who voted for the measure were invalidly appointed. After fund counsel affirmed the validity of the disputed appointments, the Union Trustees agreed to arbitrate the compensation dispute.[1]

As the scheduled arbitration drew near, another argument ignited over whether the Employer Trustees should be required to turn over income tax returns and other financial information pertaining to Trustees who might be eligible to receive the contested compensation. The Employer Trustees ultimately declined to provide these records, and the Union Trustees responded by again refusing to arbitrate the compensation dispute, arguing that the Trust Agreement does not authorize compensation for meeting attendance.

The Employer Trustees initiated this action to petition the District Court for the appointment of an arbitrator to untangle the compensation stalemate. The Union Trustees sought dismissal, asserting that the Trust Agreement does not authorize the payment of compensation to Trustees, and so any decision by an arbitrator would exceed his or her authority under § 3.15(b) of the Trust Agreement. The Employer Trustees followed with a motion for partial summary judgment contending that the Trust Agreement can be read to allow such payments, and that an arbitrator should break the impasse. Upon consideration, the District Court agreed that the Trust Agreement did not authorize payment of compensation and ordered the action dismissed with prejudice. A timely appeal followed.

---

[1] This dispute plays a central role in the second deadlock, described below.

6

**B.**

The second deadlock arises tangentially from the compensation dispute. As mentioned, the Union Trustees initially refused to arbitrate the compensation conflict on the ground that two of the Employer Trustees who voted on the compensation motion were invalidly appointed. A disagreement ensued over whether an Employer Trustee "must be a full-time employee of a contributing employer to the fund." (Case No. 16-3359 App. at 307.) One of the Union Trustees moved to "clarify and amend" the Trust Agreement to provide this requirement. (*Id.*) As expected, the vote on this motion deadlocked, and the Employer Trustees refused to arbitrate because § 3.15(b) of the Trust Agreement prohibits an arbitrator from "chang[ing] or modify[ing]" the Agreement.

Several months later, the same Union Trustee raised a very similar motion, seeking "to clarify *and confirm* that the Trust Agreement requires that all Employer Trustees must be a full time employee of a contributing employer to the Fund in order to serve on the Board of Trustees." (Case No. 16-3359 App. at 421 (emphasis added).) This new motion stood in contrast to the original motion to "clarify *and amend*" the Trust Agreement. The vote again deadlocked.

The Union Trustees brought this action after the parties failed to agree to arbitration. The Trustees submitted cross-motions for summary judgment, and the District Court ruled in favor of the Employer Trustees, finding that the Trust Agreement did not permit the Union Trustees' interpretation of the Employer Trustee eligibility requirements. The Union Trustees now appeal this decision. Both disputes have been consolidated on appeal.

7

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction over the final orders of the District Court under 28 U.S.C. § 1291. We review both memorandum opinions and orders under a plenary standard. *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 330 (3d Cir. 2008); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999) (holding standard of review is plenary where appeal "presents a legal question concerning the applicability and scope of an arbitration agreement").

## III.

Section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B), serves the important function of ensuring that a mechanism is available to break any deadlocks that arise between competing factions of trustees in the course of administering an employee benefit trust fund. As we have explained, the boards that oversee these trust funds must maintain equal representation of employers and employees, and frequent deadlocks between the two factions are a foreseeable result. To address potential stalemates, § 302 requires the two groups to agree on an impartial umpire to decide such dispute. 29 U.S.C. § 186(c)(5)(B). If they fail to agree within a reasonable period of time, either party may petition a federal district court for the appointment of such an impartial umpire. *Id.* Incorporating these requirements, the Trust Agreement at issue permits "either group of Trustees . . . [to] petition the United States District Court for the Western District of Pennsylvania to appoint such impartial umpire." (Case No. 16-1699 App. at 162–63, Trust Agreement, § 3.15(a).)

8

In both of the deadlocked motions before us on appeal, arbitrability is the key issue. In analyzing the arbitrability of a dispute, we are guided by several long established principles:

> First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'"
>
> Second, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."
>
> Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."
>
> Fourth, . . . "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"

*United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co., Div. of Lukens*, 969 F.2d 1468, 1473–74 (3d Cir. 1992) (citations omitted) (reformatted); *see AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). With

9

these principles in mind, we examine the disputed motions individually.

## A.

We begin with the compensation impasse.  The Union Trustees argue that the Trust Agreement does not permit the Trustees to authorize payment of compensation to eligible members for meeting attendance.  In their view, a decision by an arbitrator to allow such compensation would be tantamount to an amendment of the Trust Agreement—an action explicitly prohibited by the terms of the document. (Case No. 16-1699 App. at 163, Trust Agreement, § 3.15(b) ("The impartial umpire shall have no jurisdiction or authority to change or modify the provisions of th[e] Trust Agreement . . . .").)  The District Court did not believe the power to authorize such compensation existed within the framework of the Trust Agreement and declined to appoint an arbitrator on that basis.  We disagree and find that the District Court viewed this dispute from the wrong angle.

## 1.

At its core, the compensation deadlock is a dispute over proper interpretation of the Trust Agreement.  The Employer Trustees' motion specifically sought to pay compensation to eligible Trustees in "the amount of $600.00 per Trustee Sub-Committee Meeting and the amount of $600.00 per monthly Trustee Meeting, to be paid upon the Trustee's attendance at [the] meetings."  (Case No. 16-1699 App. at 130, ¶ 17.)  The Union Trustees assert that no such compensation is authorized under the terms of the Trust Agreement.

10

The Trust Agreement provides the Trustees with the "power and authority to use and apply the Trust Fund" for the enumerated purposes, including

> [t]o pay or provide for the payment of all reasonable and necessary expenses . . . (ii) of administering the affairs of this Health and Welfare Fund, including the employment of such administrative, legal, expert and clerical assistance, the purchase of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties; and (iii) of reimbursement for expenses and the payment of allowances properly and actually incurred in the performance of their duties with the Health and Welfare Fund, as permitted by law including, without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on the business of the Board of Trustees, and attendance at institutes, seminars, conferences or workshops for or on behalf of the Health and Welfare Fund.

(Case No. 16-1699 App. at 61–62, Trust Agreement, § 4.2.) The District Court waded into the weeds of the parties' competing interpretations on its way to determining that the Trust Agreement did not permit payment of compensation for meeting attendance. But the District Court did not need to go so far in its reasoning because the presumption in favor of arbitration prevails here.

11

Arbitration is a creature of contract, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs.*, 475 U.S. at 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). But where the parties "have agreed to arbitrate *some* matters pursuant to an arbitration clause, the 'law's permissive policies in respect to arbitration' counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)) (emphasis in original). Thus, "in the absence of any express provision excluding a particular grievance from arbitration," the Supreme Court has explained that "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc.*, 475 U.S. at 650.

The Trust Agreement specifically provides that "the Trustees shall have full and exclusive authority to determine all questions or controversies . . . arising . . . in connection with [the Fund] or the operation thereof" including questions of "construction of the provisions of this Trust Agreement and the terms used herein." (Case No. 16-3359 App. at 69–70.) This dispute over the proper interpretation of the Trust Agreement is well-within the power of the Trustees to decide, and because the presumption of arbitrability applies, we presume it is also within the mandate of the arbitrator to break this deadlock. Any concern that such a decision by the arbitrator would be equivalent to an amendment is misplaced, as interpretation of the language of an agreement is not an amendment of that agreement.

12

**2.**

The Union Trustees assert that the deadlock must also fall within the scope of the LMRA. The jurisdiction of a district court to appoint an impartial umpire under the LMRA is restricted to matters involving deadlocks in the "administration" of the trust fund. 29 U.S.C. § 186(c)(5)(B); *Farmer v. Fisher*, 586 F.2d 1226, 1229 (8th Cir. 1978). The Union Trustees argue that the compensation dispute does not concern the administration of the Fund and thus the District Court lacked jurisdiction.

While we have not yet ruled on what matters constitute fund administration under § 302,[2] we need not reach the

---

[2] Our sister circuits that have considered the issue have taken varying approaches. The Second Circuit has interpreted "administration" to encompass all issues that the trust agreement empowers the trustees to decide. *Mahoney v. Fisher*, 277 F.2d 5, 6 (2d Cir. 1960); *Barrett v. Miller*, 276 F.2d 429, 431 (2d Cir. 1960). The only dispute that would not fall within this broad definition of administration is one which exceeds the powers of the trustees under the agreement.

By contrast, the Eighth Circuit in *Farmer v. Fisher*, viewed administration as those decisions which relate to day-to-day management of a trust, but not to extraordinary matters. 586 F.2d at 1229. The Tenth Circuit has similarly distinguished between ordinary and extraordinary matters in the course of determining that a deadlock involving a resolution to amend a trust agreement was not a matter of administration. *See Ader v. Hughes*, 570 F.2d 303 (10th Cir. 1978).

question here. We have stated before in a similar context that "the Trust Agreement may expand the jurisdiction of the Umpire beyond that required by section 302." *Struble v. N.J. Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 335 (3d Cir. 1984). Because we find that the parties agreed to arbitrate such deadlocks over the proper interpretation of the terms of the agreement, there is no need to look to the LMRA for jurisdiction.

**B.**

The parties also find themselves deadlocked over a motion by the Union Trustees to "clarify and confirm" whether the Trust Agreement requires Employer Trustees to be full-time employees of an employer. In what appears to have been an attempt to have two or more of the Employer Trustees who voted for the compensation measure disqualified as invalidly appointed, the Union Trustees initially proposed a motion to "clarify and amend" the Trust Agreement to encompass its theory of Employer Trustee eligibility requirements. The motion deadlocked, and the Employer Trustees refused to arbitrate. But the motion for which the Union Trustees now seek the appointment of an

_____

The approaches of the Eighth and Tenth Circuits are narrower than that of the Second Circuit because there may be actions deemed "extraordinary" that would nonetheless fall within the trustees' powers under the trust agreement.[2] *See, e.g.*, *Farmer*, 506 F.2d at 1230 n.5 ("rights and powers of the trustees unrelated to day-to-day management of the trust funds are not commensurate with 'administration' as used in § 302(c)(5)(B)").

14

arbitrator seeks to "clarify and confirm" the Employer Trustee eligibility requirements rather than to "clarify and amend." Specifically, the Union Trustees' motion aims "to clarify and confirm that the trust document requires that all Employer Trustees must be a full time employee of a contributing employer to the Fund." (Case No. 16-3359 App. at 97, 208.)

The District Court set out to determine whether the Union Trustees' interpretation of the Employer Trustee eligibility requirements was tenable under the Trust Agreement, ultimately concluding that the contract could not support such an interpretation. The District Court also found that the Union Trustees' initial motion to "clarify and amend" the Trust Agreement essentially acknowledged that the Agreement, as drafted, does not require Employer Trustees to be employed by a contributing employer. Because the Trust Agreement, in the District Court's view, did not support the requirements that the Union Trustees suggested, it concluded that an arbitrator would be required to amend the agreement in order to find in the Union Trustees' favor, in derogation of the Trust Agreement's explicit prohibition that the arbitrator may not amend its terms.

We find, however, that the District Court misconstrued the effect of this motion to "clarify and confirm" the eligibility requirements for Employer Trustees. The deadlocked vote seeks to confirm whether the Union Trustees' theory that Employer Trustees must be full-time employees of a contributing employer is a proper interpretation of the terms of the Trust Agreement. This is a matter of contractual interpretation, and as we explained with regard to the compensation deadlock, the Trust Agreement specifically provides that "the Trustees shall have full and

15

exclusive authority to determine all questions or controversies . . . arising . . . in connection with [the Fund] or the operation thereof" including questions of "construction of the provisions of this Trust Agreement and the terms used herein." (Case No. 16-3359 App. at 69–70.) Thus, the presumption in favor of arbitration counsels the appointment of an arbitrator.

The motion to "clarify and confirm" is not equivalent to a motion to "clarify and amend." A motion to "clarify and confirm," as we understand it, seeks to have an arbitrator construe the agreement to determine whether the Union Trustees' interpretation is correct. A motion to "clarify and amend" takes the added step of asking the arbitrator to amend the agreement to reflect the Union Trustees' proposed interpretation. Contrary to the holding of the District Court, no decision by an arbitrator on this motion to "clarify and confirm" would lead to the amendment of the Trust Agreement. The arbitrator will either agree or disagree that the Union Trustees' interpretation is proper and supported by the text of the Trust Agreement. Put succinctly, the arbitrator will construe the language of the agreement—a power provided to the Trustees in the Trust Agreement—and will go no further. Interpretation is not amendment. It is not the District Court's place to determine the outcome of an issue that the parties agreed to arbitrate when the parties merely seek to appoint an arbitrator.

## V.

For the foregoing reasons, the District Court's Order dated March 1, 2016, in the compensation dispute will be reversed and remanded with the instruction that the District Court appoint an arbitrator. The District Court's Order dated

16

July 15, 2016, in the Employer Trustees eligibility requirements dispute will also be reversed and remanded with the same instruction.