**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1260**

_____

RICHARD KRUEGER, JR.; MICHAEL COE; SCOTT COWAN; JOHN D. SHADE; TROY NILESON; TIMOTHY KRAJEWSKI; CHRISTOPHER KIMBLE; DAVID KONIG; MICHAEL KROSS, in their capacity as Union Trustees of the Steamship Trade Association of Baltimore Incorporated-International Longshoremen's Association (AFL-CIO) Pension Fund, Benefits Trust Fund, Severance and Annuity Fund, and Vacation and Holiday Fund,

Plaintiffs - Appellants,

v.

MICHAEL ANGELOS; MORGAN BAILEY; MAURO DAL BO; BAYARD HOGANS; MARK SCHMIDT; BILL WADE; GREGORY WAIDLICH; DOUGLAS WOLFE, in their capacity as Management Trustees of the Steamship Trade Association of Baltimore Incorporated-International Longshoremen's Association (AFL-CIO) Pension Fund, Benefits Trust Fund, Severance and Annuity Fund, and Vacation and Holiday Fund,

Defendants - Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:20-cv-00885-GLR)

_____

Argued: October 28, 2021                    Decided: February 15, 2022

_____

Before GREGORY, Chief Judge, QUATTLEBAUM, Circuit Judge, and FLOYD, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Chief Judge Gregory and Senior Judge Floyd joined.

**ARGUED:** Ashley Evangeline Macaysa, ABATO, RUBENSTEIN & ABATO, P.A., Baltimore, Maryland, for Appellants. Michael J. Collins, LAW OFFICE OF MICHAEL J. COLLINS PC, Baltimore, Maryland, for Appellees. **ON BRIEF:** Paul D. Starr, ABATO, RUBENSTEIN & ABATO, P.A., Baltimore, Maryland, for Appellants.

QUATTLEBAUM, Circuit Judge:

Under the Labor Management Relations Act, unions and management can enter into trust agreements to provide employment benefits. And sometimes the management of several employers join together to reach those agreements with a union. When that happens, disputes may arise about adding or removing employers from the trust agreement's coverage. Here, we must decide whether, by statute or agreement, labor unions and management are required to arbitrate disputes about which employers are covered by the trust agreements that create funds for employee benefits.

## I.

The Steamship Trade Association of Baltimore, Inc. (STA)—an association of businesses involved with the transport of cargo into and out of the Port of Baltimore—and the International Longshoremen's Association (ILA) entered into four trust agreements to create funds that provide employee benefits in accordance with the Labor Management Relations Act. As required by the Act, the agreements provide an equal number of trustees representing the labor union (Union Trustees) and trustees representing the employers (Management Trustees).

Not all companies that do business at the Port of Baltimore are members of the STA. The dispute here arose when the Union Trustees sought to expand the definition of "Employer" in the trust agreements to include non-STA employers engaged in the same businesses as STA-affiliated employers at the Port of Baltimore. As currently defined in

3

the trust agreements, the term "Employer" means "the STA or an Employer-Member or former Employer-Member of the STA." J.A. 44.

During a meeting of the funds' trustees, the Union Trustees moved to adopt such amendments. Under the proposed amendment to the trust agreements, the term "Employer" would include "any employer who signs a CBA [collective bargaining agreement] with the ILA or its [local affiliates] that requires contributions to the Trust." *Id.* at 93. Expanding the definition of "Employer" would increase the number of contributors to the trusts. All Union Trustees voted for the motion and all Management Trustees opposed it, creating a deadlock. The Management Trustees refused the Union Trustees' request to decide the matter by arbitration.

The Union Trustees then sued to compel arbitration under 29 U.S.C. § 186(c)(5)(B). Upon the Management Trustees' motion, the district court dismissed the complaint for failure to state a claim upon which relief can be granted. The Union Trustees timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.[1]

---

[1] "We review de novo the grant of a motion to dismiss for failure to state a claim, applying the same standards as the district court." *Fairfax v. CBS Corp.*, 2 F.4th 286, 291 (4th Cir. 2021) (quotations omitted). "We take all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff, but 'we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments.'" *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). We may also consider "documents integral to and relied upon in the complaint," as long as the plaintiff does not question their authenticity, which here the Union Trustees do not. *See Fairfax*, 2 F.4th at 292.

II.

We begin with the Union Trustees' allegation that 29 U.S.C. § 186(c)(5)(B) compels arbitration of the dispute over amending the definition of "Employer" in the trust agreements. But § 186(c)(5)(B)'s arbitration provision applies only in a narrow set of circumstances. That section provides that in the event of a "deadlock on the administration of such fund," an arbitrator resolves "such deadlock."[2] *See* 29 U.S.C. § 186(c)(5)(B). Thus, to the extent that arbitration must occur under § 186(c)(5)(B), it is only over the "administration" of employee benefit trust funds.

Our Court has not yet interpreted the term "administration" in § 186(c)(5)(B), but some of our sister circuits have. Recently, the Eighth Circuit, in *Gillick v. Elliott*, 1 F.4th 608 (8th Cir. 2021), addressed a similar § 186(c)(5)(B) dispute where the union-appointed trustee sought to compel arbitration so that the arbitrator could amend the trust agreement. *Gillick* rejected the union-appointed trustee's position. "Amending a trust agreement is not 'a matter of day-to-day administration of the trust funds.'" *Id.* at 614 (quoting *Farmer v. Fisher*, 586 F.2d 1226, 1230 (8th Cir. 1978), *overruled on other grounds by Robbins v. Prosser's Moving & Storage Co.*, 700 F.2d 433 (8th Cir. 1983)). The Tenth Circuit reached the same conclusion several years prior. In *Ader v. Hughes*, 570 F.2d 303, 307 (10th Cir. 1978), it held that "[w]hatever else may be meant by trust fund 'administration,' the term does not include decisions to amend or not amend a 302(c)(5) trust agreement."

---

² To be precise, the statute designates "an impartial umpire." 29 U.S.C. § 186(c)(5)(B).

We agree with these interpretations of § 186(c)(5)(B). Consistent with *Gillick* and *Ader*, multiple dictionaries define "administration" as an executive, management role. *See, e.g.*, *Administration*, *Black's Law Dictionary* (11th ed. 2019) ("The management or performance of the executive duties of a government, institution, or business; collectively, all the actions that are involved in managing the work of an organization."); *Administration*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020) ("1 : performance of executive duties: MANAGEMENT").[3] Indeed, Merriam-Webster's Collegiate Dictionary explicitly distinguishes the term "administration" from "policy-making," i.e., an act with quasi-legislative functions such as amending an agreement. *See Administration*, *Merriam-Webster's Collegiate Dictionary*, *supra*. Amending the trust agreements, which would be changing how the trusts are constituted, is not part of managing the trusts or administering the trusts.

This understanding also comports with the rest of the statutory language in § 186(c)(5)(B). In addition to discussing the composition of the trust, § 186(c)(5)(B) focuses on how the written trust agreement must specify "the detailed basis *on which such payments are to be made*." 29 U.S.C. § 186(c)(5)(B) (emphasis added). This indicates that § 186(c)(5)(B) is concerned with the management of the funds, not changing them.

---

[3] The dictionary definitions at the time of the enactment are similar. *See Administration*, *Black's Law Dictionary* (3d ed. 1944) ("[T]he practical management and direction of the executive department . . . also conventionally applied to the whole class of public functionaries, or those in charge of the management of the executive department."); *Administration*, *Webster's New International Dictionary* (2d ed. 1940) ("2. The managing or conduct of an office or employment; the performance of the executive duties of an institution, business, or the like . . . .").

In arguing that § 186(c)(5)(B) includes amending the definition of "Employee," the Union Trustees primarily rely on two decisions from our sister circuits. *See Barrett v. Miller*, 276 F.2d 429 (2d Cir. 1960); *Emp. Trustees of W. Pa. Teamsters v. Union Trustees of W. Pa. Teamsters* (*Western Pennsylvania Teamsters*), 870 F.3d 235 (3d Cir. 2017). However, these cases do not advance the Union Trustee's position.

In *Barrett*, the union trustees proposed adopting a self-insurance program rather than continuing to pay premiums to independent insurance companies. After concluding that the trustees had no power to make this change, the Second Circuit rejected the union trustees' action to compel arbitration. The court reasoned that an arbitrator's powers extend no further than those of the trustees. *See* 276 F.2d at 431. And since the trustees were not authorized to adopt any self-insurance proposal, an arbitrator could not do so either. From the Second Court's perspective, the inability for an arbitrator to decide on a particular issue provides a "positive assurance that the contract is not susceptible to an interpretation to cover the asserted dispute." *See id.* at 431–33. This decision says nothing about whether amendments to a trust agreement constitute the administration of a trust.

Next, *Western Pennsylvania Teamsters* actually undermines the Union Trustees' position. There, the trustees were deadlocked over a motion to pay compensation to eligible trustees and a motion to clarify and confirm that the term "Employer Trustees" required such trustee to be a full-time employee of a contributing employer to the fund. Of note, the second motion sought "to clarify *and confirm*," in contrast to an earlier "motion to 'clarify *and amend*.'" 870 F.3d at 238–39 (emphases in original). In affirming the arbitration of these issues, the Third Circuit first emphasized that "the [Labor Management Relations

Act] is restricted to matters involving deadlocks in the 'administration' of the trust fund." *Id.* at 242. The court then emphasized how "no decision by an arbitrator on this motion to 'clarify and confirm' would lead to the amendment of the Trust Agreement." *Id.* at 243. The implication from the Third Circuit's decision, therefore, is that a motion to amend the trust agreement, which is what the Union Trustees seek to do in our case, is not subject to arbitration.

Finally, the Union Trustees also cite to our decision in *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union AFL-CIO/CLC, Local No. 850L v. Continental Tire North America, Inc.*, 568 F.3d 158 (4th Cir. 2009), which compelled arbitration under 29 U.S.C. § 185. This decision, however, has no bearing for interpreting § 186(c)(5)(B), which is the statutory provision at issue here. Unlike § 186(c)(5)(B), § 185 permits lawsuits for "violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). Since *United Steel* ultimately deals with a dispute over a contract violation, it provides no basis to assert a cause of action under § 186(c)(5)(B).

In sum, the authority on which the Union Trustees rely is not persuasive. Section 186(c)(5)(B) does not provide a valid reason to compel arbitration over the proposal of the Union Trustees to expand the definition of "Employer" in the trust agreements.

III.

We next consider whether the terms of the trust agreements compel arbitration. The Union Trustees argue that, independent from § 186(c)(5)(B), arbitration may be compelled by contract. In resolving contractual disputes between employers and unions over questions of arbitrability, the Supreme Court has developed several background principles. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–51 (1986); *see also W. Pa. Teamsters*, 870 F.3d at 240 (discussing *AT&T*'s principles as "long established"). Two of these principles relate to our discussion. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648. Second, if a contract contains an arbitration clause, "a presumption of arbitrability" exists, and there must be "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650. Doubts are resolved in favor of coverage. *Id.*

Here, the trust agreements contain arbitration clauses. Section 8.01 confers arbitration "[i]n the event the Trustees cannot decide any matter or resolve any dispute because of a tie vote." J.A. 74. But Section 8.01's reach is limited by Section 8.03, which states: "[t]he arbitrator shall not have the power or authority to change or modify the basic provisions of this Agreement." *Id.* at 75.

At oral argument, the Union Trustees' counsel conceded that the term "Employer," which as stated above determines, among other things, who contributes to the trusts, is a "basic provision" of the trust agreements. And for good reason. With no part of the trust agreement defining the term "basic provisions," we look at what the ordinary meaning of

such term would be. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 289 (4th Cir. 2020) (looking at the dictionary to understand the ordinary meaning because the contract did not define the term in dispute). "Basic" means "of, relating to, or forming the base or essence," or "constituting or serving as the basis or starting point." *Basic*, *Merriam-Webster's Collegiate Dictionary*, *supra*. "Basis," in turn, is defined as "the bottom of something considered as its foundation," "the principal component of something" and even "something on which something else is established or based." *Basis*, *Merriam-Webster's Collegiate Dictionary*, *supra*. Determining who contributes to the trust funds is a basic provision of the trust agreements. To put it differently, determining which entity must contribute to the trust agreements goes to the "essence" of the trusts, or at the very least qualifies as the "starting point," "foundation" and "principal component" of the trusts.[4] Thus, Section 8.03's express bar of arbitration to amend basic provisions—combined with the fact that the definition of "Employer" is a basic provision—provides the "positive assurance" as required in *AT&T*, 475 U.S. at 650, that the parties never agreed to arbitrate disputes about amending the definition of "Employer."

---

[4] Dictionary definitions of "basic" and "basis" when the trust agreements were reached are effectively the same. *See Basic*, *Webster's Third New International Dictionary* (1976) (first and second entries); *Basis*, *Webster's Third New International Dictionary*, *supra* (first, second and fourth entries). In addition, the term "provision" is not at issue. As the district court observed: "In a legal document, the word 'provision' refers to a 'clause in a statute, contract or other legal document.' . . . Thus, there is no question as to whether the definition of the term 'Employer' constitutes a provision; the Court must only determine whether it constitutes a 'basic' provision." J.A. 203 (citing *Provision*, *Black's Law Dictionary* (11th ed. 2019), *supra*).

Despite their concession about the term "Employer," the Union Trustees insist that any expansion of who may contribute to the funds is a trivial matter that does not amount to amending any basic provision. They offer three reasons for this characterization, none of which are persuasive.

First, the Union Trustees argue that non-STA employers already contribute to the funds, since the current definition of "Employer" includes "former Employer-Member of the STA." Opening Br. 18 (quoting J.A. 131, which in turn quotes Section 1.01 of the trust agreement). Thus, according to the Union Trustees, since some non-STA members are already part of the trusts, adding more non-STA members is a trivial matter. But this is unconvincing. Adding non-STA employers—but only those who used to be STA members *at one point*—might be an important line for the bargaining parties to have drawn. We see no reason to conclude that because the parties included former STA members in the definition of "Employer," including all non-STA members would be trivial.[5]

Second, the Union Trustees argue that the trustees have amended the definition of "Employee" in the past. According to them, since the definition has been amended before, doing it again would be trivial. But we fail to see the logic of this position. Our country has amended its Constitution 27 times. That hardly means doing it an 28th time is trivial. While

[5] As discussed above, *Western Pennsylvania Teamsters* bolsters our point. While the Union Trustees argue that the present dispute is comparable to *Western Pennsylvania Teamsters*, the unions in that case made sure that their motion was to "confirm" an already existing provision, not "amend." If the Union Trustees are so confident that this distinction "has no practical difference," Opening Br. 19, they could have easily adopted the same approach—which they did not. *Cf.* Resp. Br. 16 ("[T]he Union Trustees are not requesting an arbitrator to interpret existing language . . . .").

our Constitution and the trust agreements here are very different documents, this analogy reveals that it simply does not make sense that agreeing to prior amendments means any future amendment is trivial. If anything, amending the definition of "Employer" before in a way that does not include non-STA members suggests a conscious decision that such an enlargement of who must contribute to the trusts contravenes the parties' agreement.

Typically, parties expand either the fund contributors or fund beneficiaries through amendments. So was the case in *Bueno v. Gill*, No. 02 Civ. 1000DLC, 2002 WL 31106342, at *1 (S.D.N.Y. Sept. 20, 2002), *opinion adhered to on reconsideration*, 237 F. Supp. 2d 447 (S.D.N.Y. 2002), a case that the Union Trustees cite. *Bueno* held a proposal to carve out assets from the fund so that a portion could be devoted to non-union employees was not only beyond the trustees' power but also "unquestionably beyond the scope of issues that the Trust Agreement permits to be resolved by arbitration." *Id.* at *4. The court there reasoned that such amendment would "require a change and modification of basic provisions of the Trust Agreement." *Id.* While the Union Trustees argue that this case shows how the Union Trustees' proposal is modest in comparison, that is not so. In fact, *Bueno* demonstrates how changing the fundamental nature of who the trust fund recipient would be is changing a "basic provision" of a trust agreement. If the output of a trust fund (trust recipient) is a basic provision, the input (trust contributor) should be as well.

12

Third, the Union Trustees argue that, under the trust agreements, an arbitrator steps into the shoes of the trustee.[6] Based on that, they contend that an arbitrator, "rather than making change or modification to the Trust Agreements," would merely step into the shoes of the trustees to "implement its proposed change." Opening Br. 22. But the parties never agreed to amend the definition of "Employer." Absent any such agreement, there is nothing for an arbitrator to implement. And the reason the parties were deadlocked here is that they could not agree on the amendment in the first place.

In conclusion, while it is true that courts incorporate a "presumption of arbitrability" in employer-union arbitration disputes when an arbitration agreement exists, here the trust agreements provide a "positive assurance" that arbitration may not be compelled.

IV.

For the foregoing reasons, the district court's order dismissing the case is

*AFFIRMED*.

---

[6] While the Union Trustees' counsel represented to the contrary at oral argument, our review of the case record makes us question whether the Union Trustees truly argued this last point in front of the district court. After all, phrases such as "stand in the shoes" and citations to the Union Trustees' case law and legislative history related to the matter are nowhere to be found in the Union Trustees' district court briefs. Thus, it is highly likely that the Union Trustees waived their third argument. *See United States v. Davis*, 954 F.2d 182, 187 (4th Cir. 1992) ("It is an accepted rule of appellate procedure that ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken."). And even if we set aside the waiver issue, the Union Trustees' arguments fail on the merits for all the reasons discussed in this opinion.